# EPSTEIN SACKS PLLC
ATTORNEYS AT LAW
100 LAFAYETTE STREET
SUITE 502
NEW YORK, N.Y. 10013
(212) 684-1230

March 30, 2020

Hon. John G. Koeltl
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

**Filed on ECF**

Re: *United States v. Luilly Fernandez*
20 Cr. 109 (JGK)

Dear Judge Koeltl:

    We represent the defendant Luilly Fernandez pursuant to the Criminal Justice Act. We write to ask the Court to set bail for Mr. Fernandez. For the reasons described below, Mr. Fernandez is not a danger to the community, nor is he a risk of flight. He is currently detained at the MCC, where conditions relating to the current COVID-19 outbreak continue to worsen by the day, if not by the hour. In addition, he suffers from chronic asthma (he uses an inhaler), and as such is at higher risk for experiencing severe complications should he contract the virus there. We therefore respectfully submit that this combination of factors warrants Mr. Fernandez's release on bail conditions that can be set by this Court.

    The indictment in this case charges Mr. Fernandez and co-defendant Marvin Gamoneda, who is Mr. Fernandez's older brother and eight years his senior, with a racketeering conspiracy, the underlying acts of which are conspiring to sell marijuana and narcotics, and for engaging in "acts of violence" in furtherance of the conspiracy. The single act of violence described in the indictment relates to Mr. Fernandez's presence at a shooting that occurred on June 7, 2018 in the Nelson Playground in the Bronx, where a so-called "rival" (who had previously shot Mr. Gamoneda) and a teen bystander were injured.

    At Mr. Fernandez's arraignment, we elected to reserve our bail motion for a later date until we could learn more about the case and particularly about the alleged shooting. At that time, we understood from the Government that there was evidence that *both* Mr. Fernandez and Mr. Gamoneda possessed and shot guns during the shooting, and that the evidence included surveillance video from before and after the shooting, ballistics and cooperator testimony. However, having reviewed the discovery, including viewing the videos and studying the ballistics

evidence, and discussing the evidence further with the Government, we now believe that the Government's evidence that Mr. Fernandez possessed a gun and shot at the time in question is completely lacking. There is no surveillance video that puts Mr. Fernandez at the location where the shooting happened and there is no ballistics evidence of the alleged second gun that the Government claims Mr. Fernandez carried and discharged. Nor has any gun been recovered in connection with this incident. In fact, the *only* evidence that Mr. Fernandez possessed a gun that day comes from *a single cooperator*. The only other evidence that Mr. Fernandez was in the vicinity of the shooting is "cell site" information. Considering the inability of cell site information to precisely reflect a person's location, and that Mr. Fernandez had frequented that vicinity at other times (in fact, he was arrested near that location more than a year and a half after the incident), any connection between the cell site information and Mr. Fernandez's alleged participation in the shooting is weak at best.

Mr. Fernandez's criminal history does not suggest that he is a danger to society, far from it. His record consists of a handful of misdemeanor arrests for possession or sale of marijuana and one felony conviction in the Bronx for conspiracy in the 4th degree. In that case, Mr. Fernandez admitted to agreeing with others to "advance the object of trafficking narcotics" and was sentenced to what amounted to time served after having spent almost a year at Rikers. (These historical arrests are what we believe the Government will use at trial as proof that Mr. Fernandez "distributed narcotics" in furtherance of the racketeering charge.) We submit that courts in this District frequently grant bail for defendants with records similar to Mr. Fernandez's, and should do so especially under the current extraordinary pandemic circumstances and the risk it poses to inmates crowded into the MCC, from where we are receiving daily accounts of worrisome conditions and an increased number of positive test results by both inmates and jail personnel.[1] We are particularly concerned about Mr. Fernandez's well-being because he suffers from asthma, an underlying health conditioning that is understood to put someone at higher risk for complications should they contract the virus. Just this past week Mr. Fernandez experienced a severe asthma attack which caused him to have difficulty breathing, but he did not receive any medical attention from the MCC staff despite his frequent requests for help.

Magistrate Judges in the Eastern District have already recognized this exceptional and unprecedented crisis and considered the risks of COVID-19 in recent bail hearings. Judges are reviewing cases and releasing previously detained defendants, *even in cases with serious charges*, based largely upon the extraordinary risk posed to inmates detained at the MCC and MDC. *See, e.g., United States v. Eli*, 20 Cr. 50 (RJD) (RER) (E.D.N.Y. Mar. 24, 2020) (releasing, over government's objection, defendant charged with multiple robberies involving guns and drugs, because of COVID risk); *United States v. Plasencia*, 20 Mj. 205 (SJB) (E.D.N.Y. Mar. 23, 2020) (releasing because of COVID pandemic defendant charged with illegal possession of firearm after having been previously convicted of felony attempted armed robbery, and whose initial application for bail was denied for failing to present credible sureties); *see also United States v. Barrett*, 19 Cr. 436 (KAM) (E.D.N.Y. Mar. 13, 2020) (releasing defendant charged with Medicare and Medicaid fraud and conspiracy to defraud United States because of COVID pandemic).

---

[1] We do not use this letter to describe the obvious dangers that the COVID-19 virus poses to the Federal prison system and those incarcerated, and especially to someone like Mr. Fernandez who has an underlying health condition that can cause him to experience difficulty breathing under normal circumstances. However, if the Court asks for such information, we will gladly supplement this filing to provide that information and supporting documentation.

Judges in this District are also considering the dangers of COVID-19 in granting bail to previously detained defendants. For example, after having remanded a defendant who was arrested for gun possession while on supervised release for a previous narcotics gang case, Judge Nathan reversed her previous remand order "in light of circumstances that have changed since the March 6 hearing," including "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic." *United States v. Stephens*, 15 Cr. 95 (AJN) (S.D.N.Y. Mar. 19, 2020).  In setting bail, Judge Nathan noted that "[a] comprehensive view of the danger the Defendant poses to the community requires considering all factors," including COVID-19.  Other judges have similarly released defendants who were previously detained on the basis of the threats posed by a coronavirus outbreak in jails.  *See, e.g., United States v. Baker*, 20 Cr. 125 (KMK) (S.D.N.Y. Mar. 24, 2020) (releasing previously detained defendant charged with conspiracy and possession with intent to distribute controlled narcotics substances); *United States v. Lopez*, 19 Cr. 323 (JSR) (S.D.N.Y. Mar. 23, 2020) (releasing to home incarceration, over government's objection, defendant charged with conspiracy to commit Hobbs Act Robbery, use of firearm, narcotics conspiracy, and other charges); *United States v. Brandon*, 19 Cr. 644 (GBD) (S.D.N.Y. Mar. 19, 2020) (releasing on own recognizance, over government's objection that defendant was serial and continuous violator of the law, defendant awaiting sentencing on guilty plea to escape from federal custody in failing to report to halfway house, because of COVID risk).

We expect that, in opposing this motion, the Government will argue that, although Mr. Fernandez was born here and is a U.S. citizen, he is a flight risk because he has family in the Dominican Republic, and because he travelled there shortly after the June 7, 2018 incident. However, Mr. Fernandez's travel to the Dominican Republic at that time does not prove his involvement in a shooting, nor does it suggest that he will now flee if granted bail. Mr. Fernandez's father lives in the D.R. and Mr. Fernandez went there in June 2018 because his grandfather had died.  He stayed to help his family there when his paternal Uncle passed away shortly thereafter. Mr. Fernandez returned to his home in the Bronx in early September 2018, where he has lived his entire life prior to his trip and where he remained for another year and a half until his arrest in this case.  Mr. Fernandez's entire life is in New York City, where his ties are strongest.  They include his mother, his long-term girlfriend, Thalia Rivera, with whom he has been in a relationship for almost 10 years, and his precious five-year-old twin daughters, whom he shares and co-parents with Ms. Rivera.

Mr. Fernandez has eligible co-signers who are willing to sign on his behalf, and he is able to stay with Ms. Rivera who lives in Harlem.  This way he can manage his own health and help Ms. Rivera care for their daughters, both of whom also have asthma.  We respectfully submit that, given all of these circumstances, bail is warranted and there are conditions the Court can set, such as home incarceration, that will ensure Mr. Fernandez's return to court and lessen the risk of his contracting COVID-19 and suffering from complications.

Respectfully submitted,
*Sarah M. Sacks*